

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00542-CV

**IN RE** Maria **SALAZAR**

Original Mandamus Proceeding[1]

Opinion by:  Lori I. Valenzuela, Justice

Sitting:  Irene Rios, Justice
Lori I. Valenzuela, Justice
Lori Massey Brissette, Justice

Delivered and Filed: February 12, 2025

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

In this original mandamus proceeding, relator Maria Salazar challenges the trial court's July 3, 2024 Order Enforcing Division of Property (the "contempt order") and July 25, 2024 Temporary Orders for Modification of Parent-Child Relationship (the "temporary orders"). We conditionally grant the petition for writ of mandamus.

## BACKGROUND

Salazar and real party in interest John Clayton Kingrey are the parents of four children, three of whom were minors at the time of the underlying proceeding. The couple divorced in 2022, and the trial court signed an Agreed Final Decree of Divorce and Order for

---

[1] This proceeding arises out of Cause No. 21-06-61199-CV, styled *In the Matter of the Marriage of John Clayton Kingrey and Maria Kristina Kingrey and In the Interest of B.G.K., B.P.K., and B.E.K., Children*, pending in the County Court, Jim Wells County, Texas, the Honorable Jose Longoria, sitting by assignment.

Conservatorship and Child Support (the "final decree"). The final decree contained two provisions that are relevant here:

- it appointed Salazar as the parent with "the exclusive right to designate the primary residence of the children within Jim Wells, Nueces, and contiguous counties"; and

- as part of the marital property division, it awarded Kingrey an "equalization judgment" of $31,000 and ordered Salazar to pay that judgment "no later than June 7, 2022 or the house[2] will be sold and the first $31,000 in net proceeds will be awarded to" Kingrey.

On May 3, 2023, Kingrey filed a Petition for Enforcement of Division of Property by Contempt (the "contempt motion"). He alleged Salazar had violated the final decree by failing to either pay the equalization judgment or sell the house, and he asked the trial court to hold her in contempt. He did not ask the court to order a sale of the house.

On February 9, 2024, Kingrey filed a Petition to Modify Parent-Child Relationship (the "modification petition"), which requested permanent modifications of the final decree's provisions regarding conservatorship of the children. The petition further requested temporary orders designating Kingrey "as the conservator who has the temporary exclusive right to determine the primary residence of [the children] based on a finding that the children's present circumstances would significantly impair the children's physical health or emotional development[.]" Kingrey also asked the court to temporarily "restrict[] the area within which the children's primary residence shall be maintained to Jim Wells and contiguous[.]"

On June 18, 2024, the trial court heard both the contempt motion and the request for temporary orders. On the contempt motion, Kingrey's counsel represented to the trial court that Salazar had neither paid the equalization judgment nor sold the house. Kingrey himself did not testify or offer any documentary evidence on this issue. In response to Kingrey's counsel's

---

[2] The final decree appears to indicate that "the house" in this provision is the residence awarded to Salazar as her sole and separate property.

statements, Salazar—who appeared at the hearing *pro se*—told the trial court, "That property isn't going to sell for hardly anything. It's on a private road. It's not going to sell for hardly anything." She did not make any further statements on this issue.

Although Kingrey's modification petition sought temporary orders as to all three minor children, his argument at the hearing focused solely on the couple's youngest child, B.E.K. Kingrey's counsel asserted that Salazar was "doing a lot [of] out-of-town work and training, and the kids are left at their home with either friends or each other." Kingrey's counsel asked the court to appoint Kingrey as "the primary parent for [B.E.K.] . . . . Let [Salazar] continue to have the older children, the 17 and 15 year old. And let [Kingrey] take the daughter so that he can provide her a very stable home with the parent that's always there." Salazar responded:

> I have been undergoing a couple of trainings here and there. I'm gone at the most four days. My children are left in capable hands of adults who watch over them. My oldest son is 20 years old. So he does, and he is home. So he is home every day. He helps with his brothers and his sister. He is very capable of doing that.

The trial court did not hear any sworn testimony or consider any documentary evidence on this issue.

On July 3, 2024, the trial court signed the contempt order. The trial court found Salazar violated the final decree by failing to pay the equalization judgment and failing to list the house for sale; found her in contempt for those violations; ordered her to list the house for sale with a specific real estate agent "no later than June 25, 2024"; ordered both Salazar and Kingrey "to accept the first bona fide offer that meets or exceeds 95% of the sales price"; and awarded Kingrey $4,000 in attorney's fees. On July 25, 2024, the trial court signed the temporary orders, which gave Kingrey "the exclusive right to designate the primary residence of BEK without regard to geographic area."

On August 13, 2024, Salazar filed this original proceeding and an emergency motion requesting a stay of the contempt order and temporary orders. On August 15, 2024, we granted Salazar's emergency motion and invited the trial court and Kingrey to file a response to Salazar's petition. No response was filed.

## ANALYSIS

### *Standard of Review*

Mandamus is an extraordinary remedy that will issue only if the trial court committed a clear abuse of discretion for which the relator has no adequate remedy on appeal. *See, e.g.*, *In re Kappmeyer*, 668 S.W.3d 651, 654 (Tex. 2023) (orig. proceeding). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without regard to guiding rules and principles, or if it fails to correctly analyze or apply the law. *See id.* at 655; *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding) ("A trial court has no 'discretion' in determining what the law is or applying the law to the facts."). In determining whether a relator has an adequate remedy by appeal, we balance the benefits of mandamus review against the detriments. *In re Essex Ins. Co.*, 450 S.W.3d 524, 528 (Tex. 2014) (orig. proceeding) (per curiam).

### *Contempt Order*

In her first issue, Salazar argues the trial court abused its discretion by issuing the contempt order because its finding that she violated the final decree is not based on competent evidence. Salazar contends the record shows "the [trial court] ruled solely on the basis of [Kingrey's] counsel's prayer without taking into consideration any sworn evidence or documentary evidence of any kind."

As the movant, Kingrey bore the burden of showing Salazar violated the terms of the final decree. *See, e.g.*, *Woody v. Woody*, 429 S.W.3d 792, 798 (Tex. App.—Houston [14th Dist.]

- 4 -

2014, no pet.). "[A] judgment of contempt without support in the evidence is void[.]" *Ex parte Davila*, 718 S.W.2d 281, 282 (Tex. 1986) (orig. proceeding) (per curiam); *In re Quintanilla*, No. 13-17-00470-CV, 2017 WL 3726184, at *2 (Tex. App.—Corpus Christi–Edinburg Aug. 29, 2017, orig. proceeding) (mem. op.).

The contempt motion itself was not sworn, and it did not include an affidavit or other evidence to support its allegations. Additionally, Kingrey did not testify or present any documentary evidence during the hearing. The record shows that the only support for a finding that Salazar violated the final decree came from the following unsworn statements by Kingrey's counsel:

> If you look at the decree of divorce, what was put into the decree was that Ms. Kingrey—Ms. Salazar would refinance the property, or sell it, and give an equalizing judgment to Mr. Kingrey in the amount of 31,000. That has not been done. The house has not been sold. And it has not—the judgment has not been paid. It was supposed to be done by June 7, 2022.

Kingrey's counsel then asked the trial court whether it would "like to hear some testimony on" Kingrey's requests for relief or if she should "just kind of go over each" request. The court responded, "Just go over them." Kingrey's counsel did not offer any further statements on the enforcement action or explain the underlying factual basis for her statements about Salazar's alleged non-compliance with the final decree. Salazar herself did not admit the alleged violations, and neither the trial court nor Kingrey's counsel questioned her on that issue.

Salazar is correct that unsworn arguments of counsel generally are not competent evidence. *See Musculoskeletal Imaging Consultants, LLC v. Jar Enters., Inc.*, 631 S.W.3d 739, 743 (Tex. App.—San Antonio 2021, no pet.). An attorney's unsworn statements during a hearing may, however, amount to competent evidence "when the circumstances clearly indicate that the attorney is tendering evidence on the record based on personal knowledge and the opposing party

fails to object." *Vaccaro v. Raymond James & Assocs., Inc.*, 655 S.W.3d 485, 491–92 (Tex. App.—Fort Worth 2022, no pet.).

Salazar did not object to Kingrey's counsel's unsworn statements. However, nothing in the record indicates Kingrey's counsel had personal knowledge about whether Salazar had paid the equalization judgment or attempted to sell the house. *See id.* at 492; *see also* TEX. R. EVID. 602; *cf. In re Est. of Brown*, 697 S.W.3d 647, 654 (Tex. 2024) (per curiam) (attorney's unsworn statements regarding nonproduction of a will were "based on her personal knowledge because she conducted the search of [decedent's] home [for the will] herself"); *Banda v. Garcia*, 955 S.W.2d 270, 271–72 (Tex. 1997) (per curiam) (attorney had personal knowledge of existence and terms of settlement agreement because she personally accepted the settlement on her client's behalf). Because Kingrey's counsel's unsworn statements did not establish her personal knowledge of the underlying facts, those statements were insufficient to establish that Salazar violated the final decree. *See Vaccaro*, 655 S.W.3d at 491–92. We conclude the contempt order is not supported by competent evidence and is therefore void. *In re Quintanilla*, 2017 WL 3726184, at *2.

Having concluded the trial court abused its discretion, we must also determine whether Salazar has an adequate remedy on appeal. A trial court's contempt ruling cannot be reviewed on direct appeal. *See, e.g.*, *In re Janson*, 614 S.W.3d 724, 727 (Tex. 2020) (orig. proceeding) (per curiam). Where, as here, the trial court does not order the contemnor confined, a contempt judgment may only be challenged through a petition for writ of mandamus. *Id.* Accordingly, Salazar lacks an adequate remedy on appeal as to the contempt order.[3]

---

[3] We note that direct appeal ordinarily provides an adequate remedy to challenge an order enforcing a post-divorce property division. *See, e.g.*, *Guerrero v. Guerra*, 165 S.W.3d 778, 780 (Tex. App.—San Antonio 2005, no pet.) (reviewing enforcement order on direct appeal). Here, however, the evidentiary issues that invalidate the contempt finding also apply to the July 3, 2024 order's non-contempt findings. Under these circumstances, we conclude the

We sustain Salazar's first issue and conditionally grant her petition for writ of mandamus as to the contempt order.

### *Temporary Orders*

In her second and third issues, Salazar argues the trial court abused its discretion by rendering temporary orders that eliminated the geographic restriction on B.E.K.'s residence and gave Kingrey the right to designate B.E.K.'s primary residence. As support for these issues, Salazar relies on section 156.006(b)(1) of the Texas Family Code.

"While a suit for modification is pending, the court may not render a temporary order that has the effect of creating a designation, or changing the designation, of the person who has the exclusive right to designate the primary residence of the child, or the effect of . . . changing or eliminating the geographic area, within which a conservator must maintain the child's primary residence, under the final order unless the temporary order is in the best interest of the child and," inter alia, "the order is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development[.]"[4] TEX. FAM. CODE § 156.006(b)(1). Because the temporary orders changed the final decree's designation "of the person who has the exclusive right to designate the primary residence of" B.E.K. and removed the final decree's geographic restrictions on B.E.K.'s residence, section 156.006(b)(1)'s requirements apply here. *See id.*

Section 156.001(b)(1) imposes a high burden on the movant, and a trial court lacks authority to grant temporary relief unless the movant satisfies that burden. *In re Walser*, 648

---

benefits of mandamus review outweigh its detriments as to the entire order. *See In re Gulf Expl., LLC*, 289 S.W.3d 836, 842 (Tex. 2009) (orig. proceeding) (adequacy of appellate remedy "depends on a careful balance of the case-specific benefits and detriments of delaying or interrupting a particular proceeding"). Our conclusion on this point is limited to these specific facts.

[4] While section 156.006(b) lists two other circumstances in which a trial court may temporarily modify the person with the exclusive right to designate a child's primary residence or the geographic restrictions on a child's residence, neither of those circumstances are relevant here. TEX. FAM. CODE § 156.006(b)(2), (3).

S.W.3d 442, 446 (Tex. App.—San Antonio 2021, orig. proceeding); *In re Sanchez*, 228 S.W.3d 214, 217 (Tex. App.—San Antonio 2007, orig. proceeding). The movant must "present evidence of bad acts or omissions committed against the children." *In re Walser*, 648 S.W.3d at 446. A showing that the requested temporary orders are in the children's best interest, without more, is not sufficient. *See In re Ostrofsky*, 112 S.W.3d 925, 929–30 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding).

Additionally, a movant who requests temporary orders under section 156.006(b)(1) "shall execute and attach to the motion an affidavit on the person's personal knowledge or the person's belief based on representations made to the person by a person with personal knowledge that contains facts that support the allegation that the child's present circumstances would significantly impair the child's physical health or emotional development." TEX. FAM. CODE § 156.006(b-1). "The court shall deny the relief sought and decline to schedule a hearing on the motion unless the court determines, on the basis of the affidavit, that facts adequate to support the allegation are stated in the affidavit." *Id.*

Here, Kingrey's modification petition did not include an affidavit to support his allegation that B.E.K.'s present circumstances would significantly impair her physical health or emotional development. *See id.* The trial court therefore abused its discretion by holding a hearing on Kingrey's request for temporary orders. *See id.*; *In re Walser*, 648 S.W.3d at 446. However, because that "error is harmless if the testimony admitted during the hearing supports an allegation that [B.E.K.'s] environment may significantly impair [her] physical health or emotional development," we will examine the record for evidence to support a finding that B.E.K.'s environment at the time of the hearing may significantly impair her physical health or emotional development. *In re Walser*, 648 S.W.3d at 446.

After reviewing the record, we conclude it contains no such evidence. The trial court heard unsworn representations that Salazar left B.E.K. in the care of other adults for short periods of time while she was away from home for work-related training. But Kingrey did not present any evidence, unsworn or otherwise, that Salazar's absences or childcare arrangements had any effect at all on B.E.K.'s physical health or emotional development. *See id.* at 447–48 (father's testimony about condition of mother's home, her attempts to terminate or restrict his parental rights, and her "inconsistent responses to his attempts to communicate with the children" was legally insufficient to support finding that children's circumstances significantly impaired their physical health or emotional development); *In re Johnson*, No. 07-16-00123-CV, 2016 WL 2609651, at *1, *4–5 (Tex. App.—Amarillo May 5, 2016, orig. proceeding) (mem. op.) (evidence that mother blocked father from leaving with child, child "cried hysterically," and police were called to the scene was "no evidence that [mother's] inferred conduct would significantly impair [child's] physical health or emotional development"); *In re Rather*, No. 14-11-00924-CV, 2011 WL 6141677, at *2 (Tex. App.—Houston [14th Dist.] Dec. 8, 2011, orig. proceeding) (per curiam) (mem. op.) (testimony that mother's previous home "was messy and unsanitary," paternal grandmother did not believe mother properly supervised child, and child did not have a coat on a cold night was insufficient to support finding of significant impairment).

The record establishes that Kingrey did not meet the high burden imposed by section 156.006(b)(1). TEX. FAM. CODE § 156.006(b)(1); *In re Walser*, 648 S.W.3d at 447–48. As a result, the trial court abused its discretion by rendering a temporary order that gave Kingrey the exclusive right to designate B.E.K.'s primary residence and eliminated the final decree's geographic restriction on B.E.K.'s residence. TEX. FAM. CODE § 156.006(b)(1); *In re Walser*, 648 S.W.3d at 448.

Like contempt orders, temporary orders in pending suits affecting the parent-child relationship may not be challenged on direct appeal. *See, e.g.*, *In re Ostrofsky*, 112 S.W.3d at 928. Accordingly, "mandamus is an appropriate means to challenge" such orders. *In re J.W.*, No. 02-18-00419-CV, 2019 WL 2223216, at *2 (Tex. App.—Fort Worth May 23, 2019, orig. proceeding) (mem. op.). Because Salazar has established both a clear abuse of discretion and that she lacks an adequate remedy on appeal, she is entitled to mandamus relief as to the temporary orders.

## CONCLUSION

We conditionally grant Salazar's petition for writ of mandamus. We direct the Honorable Jose Longoria to, within fifteen days: (1) vacate the July 3, 2024 Order Enforcing Division of Property; and (2) vacate the portions of the July 25, 2024 Temporary Orders for Modification of Parent-Child Relationship that appoint real party in interest John Clayton Kingrey as the person with the exclusive right to designate B.E.K.'s primary residence and remove the geographic restrictions on B.E.K.'s primary residence. The writ will issue only if we are informed Judge Longoria has failed to comply with this order.


Lori I. Valenzuela, Justice